1  Bruce Leichty, #132876
   Bruce Leichty, A Professional Corporation
2  264 Clovis Avenue
   Clovis, California 93612
3  (559) 298-5900
   (951) 676-7462 (fax)
4  leichty@sbcglobal.net
   1959SAC.A18
5
   Attorney for Kimberly Frisk, Plaintiff
6

7

8                  IN THE UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         SACRAMENTO DIVISION

11

12                                    )
                                      )   Case Number: 2:23-CV-00897-KJM-DB
13   KIMBERLY FRISK,                  )
                                      )   [Removed from San Joaquin County Superior Court
14                                    )   Case No. STK-CV-UWT-2023-0003084]
                                      )
15                                    )   **SECOND AMENDED**
                                      )   COMPLAINT FOR SPECIAL AND GENERAL
16          Plaintiff,                )   DAMAGES BASED ON BREACH OF
                                      )   EMPLOYMENT CONTRACT, AND
17                                    )   FOR BREACH OF COVENANT OF
                                      )   GOOD FAITH AND FAIR DEALING;
18                                    )   **AND FOR AIDING AND ABETTING**
                                      )   **INTENTIONAL TORT RE: DISCHARGE;**
19                                    )   AND FOR WRONGFUL DISCHARGE
                                      )   BASED ON VIOLATION OF PUBLIC POLICY
20                                    )   INCLUDING  FOR DISCRIMINATION BASED
                                      )   ON RELIGION AND RETALIATION UNDER CAL.
21                                    )   CIVIL CODE SECTION 51(b) AND GOVT. CODE
                                      )   12940(a), (l)(1), (4), 12926(q), 12965(c)(6) AND
22                                    )   FOR DISCRIMINATION AND RETALIATION
                                      )   UNDER TITLE VII OF CIVIL RIGHTS ACT
23   v.                               )   [42 U.S.C. SECTION 2000e -2(a)(1) and (2),
                                      )   2000-3(a),  2000e-5(k), 2000e(j)]; **AND FOR**
24                                    )   **BREACH OF DUTY RE: MEDICAL PRIVACY**
     EDEN HOUSING                     )   **[CAL. CIVIL CODE SECTION 56.20, 56.36(b)]**
25   MANAGEMENT, INC.;                )
     SCHWARTZ SEMERDJIAN              )
26   CAULEY & EVANS LLP;              )   JURY TRIAL REQUESTED
                                      )
27          Defendants.               )
                                      )
28                                    )

KIMBERLY FRISK, PLAINTIFF ("Plaintiff"), hereby complains and alleges against Defendant EDEN HOUSING MANAGEMENT, INC. ("Eden") **and SCHWARTZ SEMERDJIAN CAULEY SCHNENA & BUSH LLP ("Schwartz")** as follows:

## GENERAL ALLEGATIONS

1. Plaintiff Kimberly Frisk is now and at all times referenced herein was a competent adult residing in San Joaquin County, California.

**2. Defendant Eden Housing Management, Inc. ("Eden") is now and at all times referenced in this Complaint was a non-governmental not-for-profit corporation organized under the laws of the State of California and having a principal place of business in Alameda County, California.**

3. At all times referenced in this Complaint, Eden also did business in and operated in San Joaquin County, California and continues to do so.

4. This action **was** commenced in the Superior Court of California for the County of San Joaquin because the allegations and claims for relief set forth herein arise out of acts, omissions, inaction, events and determinations which took place in that county, and because the practice or practices complained of herein occurred in the County of San Joaquin.

5. This action **was** commenced in the Superior Court of California for the County of San Joaquin for the additional reason that the Defendant derives substantial revenue from its activities in San Joaquin County.

6. This action **was** commenced in the Superior Court of California for the County of San Joaquin for the additional reason that one of the principal places of business of Defendant is San Joaquin County.

7. This action **was** commenced in the Superior Court of California for the County of San Joaquin for the additional reason that all of the claims herein relate to injury suffered in the County of San Joaquin.

COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT, WRONGFUL TERMINATION, AND DISCRIMINATION [etc.]

**8. Prior to the filing of this amended pleading, Defendant Eden removed the case to federal court.**

**9. Defendant Schwartz Semerdjian Cauley Schena & Bush ("Schwartz") is a limited liability partnership with its principal place of business located in San Diego County, California, and is organized for the purpose of the practice of law.**

**10. On information and belief Schwartz is the lawful successor in interest to the similarly organized law partnership known as Schwartz Semerdjian Cauley & Evans ("SSCE") and is liable either individually or coextensively with the partnership formerly known as SSCE and its partners for all obligations, liabilities and debts, whether known or unknown, matured or inchoate, incurred by SSCE, or in any case incurred by SSCE based on the events identified in this action; and any reference to Schwartz in this Complaint is also a reference to SSCE.**

11. At all times relevant hereto, Eden was subject and remains subject to suit under the California Fair Employment and Housing Act, Gov. Code Section 12900 et seq. ("FEHA"), including but not limited to Section 12940(a), in that Eden has regularly employed and does regularly employs five or more persons.

12. At all times relevant hereto, Eden was subject and remains subject to suit under the California Fair Employment and Housing Act, Gov. Code Section 12900 et seq. ("FEHA"), including but not limited to Section 12940(a), in that Eden was and is neither a religious association or a religious corporation that is not organized for private profit or any other type of entity exempt from the application of that Section.

13. At all times as of at least August 16, 2021, Eden had formed a Diversity, Equity and Inclusion Council and had announced to its employees its intention to, among other things, be "more diverse, equitable and inclusive in all areas that impact our policies [and] procedures...."

**14. This court has subject matter jurisdiction over this action because of the claim**

made under 42 U.S.C. Section 2000 and pursuant to the removal of the case from San Joaquin County Superior Court.

15. At all times relevant hereto, Plaintiff was a member of a class protected by state and federal law because she had and held *bona fide* religious beliefs.

16. In Plaintiff's case, her beliefs were Christian and were of a deeply personal nature.

17. Plaintiff did not during the time of her employment by Eden belong to a religious organization or denomination.

18. **Independent of her religious beliefs, Plaintiff at all times relevant hereto guarded her medical privacy.**

**18A. Plaintiff at no time relevant hereto voluntarily disclosed any illness or health issue or plan of treatment or any other medical information to Eden or any of its employees acting in a capacity as representatives of Eden.**

**18B. Plaintiff at no time relevant hereto voluntarily disclosed any illness or health issue or plan of treatment or any other medical information to any third party contractor used by Eden.**

**18C. Plaintiff at no time relevant hereto consented to the disclosure by Eden of any illness or health issue or plan of treatment or other medical information to any third party or contractor with whom Eden had a contractual relationship whether written or verbal, other than U.S. Healthworks as the operator of a reporting platform known as Apricity.**

19. Independent of her religious beliefs, Plaintiff at all times relevant hereto was vigilant to avoid subjecting herself to health risks whenever any exposure to undue risk or known harm was within her control.

**19A. Plaintiff at all times relevant hereto was vigilant to avoid having any of her private medical information come into possession of anyone lacking legal authority to view, obtain or possess it where she had not given her consent for such access.**

20. Plaintiff was employed by Eden on or about October 9, 2018 as an Assistant Manager.

21.  Plaintiff was employed by Eden on or about October 9, 2018 as an Assistant Manager for three properties in San Joaquin County in which 158 tenants resided, known as Union Court, Almond Court and Almond Terrace, sometimes referred to by Eden as "subsidized housing."

22.  On information and belief, although Eden or its affiliate on or about October 3, 2018 caused Plaintiff to be given an "offer" and had Plaintiff sign that offer along with certain forms including a Notice to Employee containing wage information (identified as a notice under Labor Code Section 2810.5) and Driver's License and Automobile Insurance Declaration, and certain forms required for a background investigation, Eden did not have any of its officers sign the offer either before or after Plaintiff had signed it.

**23.  Eden did not at the time of commencement of Plaintiff's employment sign anything which became a legally binding contract for Plaintiff's employment or whose terms were all legally enforceable by Eden.**

**23A.  There was no legally binding written contract between Plaintiff and Eden in part based on the absence of a corporate officer signature on any relevant document.**

**23B.  There was no legally binding written contract between Plaintiff and Eden in part because of a failure of reciprocity in authority on the part of signers of any relevant employment-related document(s) to create an obligation.**

24.  On or about December 19, 2018, Plaintiff signed a document purporting to be a "Change in Employment Agreement" accepting the terms of an "employment change" initiated by Eden with respect to her employment (the "December 2018 Document").

25.  The terms in the December 2018 Document superceded the terms of the offer of October 3, 2018, irrespective of whether the latter had become a formal written contract or not.

26.  On information and belief, neither the October 3, 2018 offer or the December 2018 Document were signed by Eden or its officers, but instead showed a signature of a "Recruiter" affiliated with Eden.

27.  The relationship of Recruiter to Eden was not disclosed in either the October 3, 2018

COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT, WRONGFUL TERMINATION, AND DISCRIMINATION [etc.]

offer or the December 2018 Document, nor was it disclosed at that time whether he was an employee or officer of Eden.

28. On information and belief, the Recruiter, Patrick Espino, was not a corporate officer of Eden at the time he signed either the October 3, 2018 "offer" or December 2018 Document.

29. Pursuant to the changes memorialized in the December 2018 Document Plaintiff thereafter became a full-time employee of Eden.

30. Although the December 2018 Document contained the acknowledgment by Plaintiff that "either party may terminate the employment relationship at any time, with or without notice," there was no provision therein for termination "without cause."

**31. Plaintiff at no time agreed with Eden that her employment could be terminated "without cause."**

**31A. At no time in connection with Plaintiff's assumption of new job duties on or about December 2018 was she informed that her employment could be terminated "without cause."**

32. The December 2018 Document does not refer to an "at will" employment arrangement.

**33. As an element of her modified job beginning in late December 2018, Plaintiff was provided with a staff unit at Union Court, Manteca, CA.**

**33A. As an element of her modified job beginning in late December 2018, Plaintiff was required to reside in a staff unit for the housing she was to assist in managing.**

34. Union Court consisted at the time of the change of terms of Plaintiff's employment of multiple buildings featuring common areas and two-bedroom apartments and advertising "on-site management offices."

35. On or about 12/28/18 Eden had Plaintiff sign an Apartment Agreement for a unit known as 940 S. Union Road, #6, Manteca, CA 95337 ("Union Unit") which Plaintiff was asked to occupy and required to occupy as a condition of the change in terms of her employment whereby Plaintiff became a "Night Manager" for Eden, with responsibilities only for Union Court.

36.  Plaintiff began her occupancy of the Union Unit on 12/28/18 and continued to occupy the Union Unit as her only residence through 9/27/21.

37.   Although Plaintiff believed that the Apartment Agreement was  a license agreement allowing her use of the Union Unit, as stated in the Apartment Agreement itself, as part of the Apartment Agreement Plaintiff was asked to and did agree that her failure to "obey" rules promulgated by Eden "may be grounds for termination of employee's employment and/or termination of employee's occupancy of the apartment."

**38.  There was no rule of Eden requiring her vaccination at the time Plaintiff entered into either the Apartment Agreement or the agreement that she would be a Night Manager.**

**39.   Eden by insertion of the clause referred to in Paragraph 37 above incurred a concurrent obligation to Plaintiff to not create unreasonable rules for occupancy that would jeopardize Plaintiff's employment.**

**40.  Living on-site at Union Court was one of the conditions imposed on Plaintiff in connection with the offer of employment to her as Night Manager for Union Court and her continuing employment in that capacity.**

41.  Being "on-call" at nights was one of the conditions imposed on Plaintiff in connection with the offer of employment of her and her continuing employment.

42.  Plaintiff gave up her tenancy at 868 Ridgeview Court, Oakdale, CA,  in order to accept employment with Eden and move into a unit at Union Court.

43.  Eden provided both income and housing to Plaintiff in exchange for Plaintiff's services during the period December 28, 2018 through September 30, 2021.

44.  As a Night Manager, Plaintiff was hired at the rate of $17.94/hour for a fixed 40-hour work week, with no express provision for overtime.

**45.  Without imputing any value of her residence Plaintiff's rate of compensation was reduced by $.96/hour to $17.94/hour at the time she assumed the position of Night Manager.**

46.   Eden expected its night managers, including Plaintiff, to provide an after-hours

COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT, WRONGFUL TERMINATION, AND DISCRIMINATION [etc.]

management presence in coordination with or in the absence of a resident manager, including emergency response as needed and ensuring that common areas were secured.

47.  Plaintiff's employment as of both October 2018 and December 2018 did not require religious beliefs or an absence of religious beliefs.

48.  Eden's employment policies from all appearances to Plaintiff at the time she was originally employed and then employed full-time, and particularly after August 18, 2021, were religion-neutral and purporting to be welcoming persons of all religious beliefs.

**48A. At the time of Plaintiff's original employment policies and at all times thereafter, Eden regarded its employment policies as religion-neutral and regarded itself as welcoming of persons of all religious beliefs.**

49.  Eden's employment polices and rules did not require Plaintiff to forfeit either her medical privacy or interest in protecting herself from known harm or undue risk to her health in exchange for her acceptance of a managerial position.

50.  Plaintiff was employed continuously by Eden from the date of her October 2018 hire to a date no earlier than September 30, 2021.

51.  Plaintiff as of December 28, 2018 and at all times until October 1, 2021 was an Assistant Manager/Night Manager for Eden and was sometimes referred to only as Night Manager.

52.  At all times after being given increased responsibility as Night Manager in December 2018, Plaintiff received favorable employment evaluations and performance reviews.

53.  Plaintiff at all times during her employment with Eden believed in doing things "by the book" and acted accordingly.

54.  Plaintiff's adherence to rules during her employment was highly valued by Eden.

55.  On information and belief, Eden had a higher and greater expectation regarding character traits of a night manager than other staff who were not provided with housing.

56.  Plaintiff knew of and accepted the greater demands on her that accompanied her position as a night manager.

57. On or about June 9, 2020, Plaintiff received a message of commendation from Sandra Reeder, Senior Community Manager and Plaintiff's supervisor, praising Plaintiff for "taking in stride" the differences in the way Eden did business during the "difficult time with the COVID-19," and "you have single-handedly managed Union Court on your own with very little direction from me."

58. In the same message Eden by Reeder stated to Plaintiff, "I sometimes push you a little harder only because I know you can do it, or I know you already know the answer. You have shown your commitment not only [to] Eden but to the residents we service."

**59. On or about November 24, 2020, Plaintiff received word that she would receive a gift card along with a message from the Eden "Executive Team," stating, "Thanks for all you do to support Eden Housing and our residents," and she subsequently received a $300 gift card along with a message, "Thanks for being on the front lines and taking such good care of our residents."**

60. Plaintiff received compensation rate increases effective 1/1/2020 to $18.65/hour, and effective 1/1/21 to $19.40/hour.

61. As of August 16, 2021, Plaintiff was due to receive a compensation rate increase effective 1/1/22 to $20.15/hour which Plaintiff fully expected to receive based on her longevity and experience with Eden.

62. As of August 16, 2021 Plaintiff moreover expected that her employment would still be in effect on 1/1/23 when she would be due to receive another increase in her rate of compensation to $20.90/hour.

63. Plaintiff had every reason to believe as of August 16, 2021 from her relationship with her supervisor that her employment was for the indefinite future and, as one of a limited and select group of employees, would be ended only based on Plaintiff's own choice.

**64. Plaintiff had been led to believe by Eden including by the absence of any disclaimer to the contrary during her employment through August 16, 2021 that her**

COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT, WRONGFUL TERMINATION, AND DISCRIMINATION [etc.]

employment was for the indefinite future and would be ended only based on Plaintiff's own choice.

65.  Plaintiff knew considerably before August 2021 that the qualities and traits she brought to the position of Night Manager/Assistant Manager were highly sought after by Eden.

**65A.  Plaintiff's knowledge as set forth in Para. 65 above was reinforced by events subsequent to the imposition of the vaccine mandate including but not limited to the fact that as Eden lost employees, Eden for the first time that Plaintiff observed began resorting to various incentives and rewards in order to obtain applicants for employment.**

66.  After a pandemic was declared in March 2020 in the United States involving the coronavirus COVID-19 ("COVID" or "COVID-19"), Plaintiff in April 2020 received a notification from Eden headed HIPAA Considerations and stating that "we must respect the privacy of our employees...for health-related issues. Communications regarding COVID-19 confirmations should not include any identifying information...."

67.  In a subsequent policy memorandum issued to Plaintiff and updated July 7, 2020, titled "Eden Housing COVID-19 Response Protocol – Employees and Vendors/Contractors," Eden announced certain scenarios for response to illness all relying on self-reporting of an employee or a contractor or worker for an outside organization.

68.  At Eden's request Plaintiff observed a quarantine of about 14 days in connection with a March 2020 illness she reported, even though her illness was not determined to be COVID-19.

69.  The quarantine that Plaintiff was asked to observe and did observe in March 2020 was of approximately 14 days duration, during which she remained in her unit, and after which she resumed all her duties.

70.  In its policy **updated 7/7/2020 Eden stated**  that employees reporting COVID-19 would be **asked to stay away from work** until they "are no longer sick, have tested negative or have been self-quarantined for 14 days," and that "the company must keep the vendor or contractor

away from Eden site until they are no longer sick, have tested negative or have been self-quarantined for 14 days."

71.  On or about July 23, 2020 Plaintiff received notification from Eden of a reporting mechanism **available through a third party U.S. Healthwork, Apricity ("Apricity")** whereby she was required to provide her temperature and complete a brief questionnaire on a daily basis.

72.  One of the assurances communicated to Plaintiff and other employees at the time of the Apricity notification was that Eden "will not have access to an employee's protected health information, including symptoms, medical history, current temperature or other information entered into the monitoring system."

**72A.    Plaintiff either consented to the collection of the limited information noted above by third party U.S. Healthworks or her consent was deemed given as she began using the Apricity platform to report.**

73.  Plaintiff complied with the mandatory Apricity reporting and temperature-taking requirement and continued to do so through September 2021.

74.  In November 2020 Eden issued a memorandum to all Eden staff stating that "COVID-19 continues to spread throughout the country at an alarming rate and pose a significant threat to community health," and "please remember to wear a mask, stay six feet apart, wash your hands frequently and getting your flu shot."

75.  At all times relevant to Plaintiff's employment, Plaintiff and other employees were offered health coverage and insurance with Kaiser Permanente ("Kaiser"), which was the only option other than to obtain some reimbursement for the employee's own coverage upon proof of enrollment in another plan.

76.  On 12/16/2020, Eden notified its employees of the approval of a vaccine made by Pfizer in which Kaiser had played a significant role in a clinical trial, and employees were told that they "can get the vaccine [free of charge] from any facility that has been approved as a COVID-19 vaccine provider" by the state health department.

COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT, WRONGFUL TERMINATION, AND DISCRIMINATION [etc.]

77. The memo distributed to Eden employees was signed by "Fei Zhong, MBA, Account Manager, Kaiser Permanente, Account Mangement - Large Groups."

78. On information and belief, as of 12/16/2020 all substances identified as vaccines for COVID-19 including that manufactured by Pfizer were approved in the United States under an "emergency use authorization" which bypassed some of the safety and testing features that usually accompanied approval of a vaccine.

79. Plaintiff and other employees were notified in March 2021 of a "new feature" to the Apricity reporting mechanism whereby users were asked to input any "vaccination status" into their "daily questionnaire."

80. Since Plaintiff was not vaccinated and **did not intend on her own volition** to be vaccinated, Plaintiff continued after March 2021 to cooperate with the **confidential** Apricity questionnaire requirement without modification.

**81. As of the implementation of the daily Apricity questionnaire and at all times thereafter until forced to after August 17, 2021, Plaintiff had never informed anyone that she was not vaccinated in connection with the COVID-19 pandemic.**

**81A. As of the implementation of the daily Apricity questionnaire and at all times thereafter until forced to after August 17, 2021, Plaintiff had never informed Eden or any employee of Eden that she was not vaccinated in connection with the COVID-19 pandemic.**

82. In October 2020 Plaintiff was not ill, but was required to quarantine for 14 days based on Eden's contention that she had been exposed to a resident who had developed COVID.

83. In April 2021 Plaintiff was not ill, but was required to quarantine for 14 days based on Eden's contention that she had been exposed to a co-workers who had developed COVID.

84. Plaintiff and other employees were notified by Eden May 21, 2021 that by county ordinance employers were required to check with all unvaccinated employees about their vaccination status, and that "If you have been vaccinated please enter the information into Apricity."

COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT, WRONGFUL TERMINATION, AND DISCRIMINATION [etc.]

85. By that same notification, Eden told Plaintiff and its employees that "We will be referring to Apricity for your vaccine status. Your vaccine status is confidential, please do not respond to this e-mail."

86. On or about August 17, 2021, Plaintiff was notified that all employees of Eden would be required to be vaccinated, based on a certain protocol and by means of injection of one of several vaccines, ostensibly as protection against contracting the illness commonly referred to as COVID or COVID-19.

**87. Eden announced that it would give employees 45 days to comply with its new mandate.**

88. As of August 17, 2021, Eden took the position and communicated to its employees that vaccination was also a mechanism for preventing or reducing the transmission of COVID to others.

89. Eden notified Plaintiff and all employees on 8/23/21 that the FDA had as of that day approved "Pfizer's COVID-19 vaccine," and that this vaccine "will now be marketed as Comirnaty."

90. On information and belief, Pfizer never made available for use in the United States the vaccine approved as "Comirnauty" by the FDA, but instead only a prior version approved under a "emergency use authorization."

91. On information and belief, at all times between August 17, 2021 and October 1, 2021, the only vaccines available to Eden employees in the United States were those which had been approved under an "emergency use authorization."

92. At no time as of August 17, 2021 had Plaintiff waived her rights to protect her health information or agreed to give Eden access to any protected health information including medical history **or treatment plan or absence thereof**.

93. Plaintiff was not in ill health as of August 17, 2021 and had not suffered illness of any kind either preventing her during 2021 from performing her job, or known to have been transmitted to others during 2020 or 2021.

94. Plaintiff had not contracted an illness that was identified as caused by a coronavirus or COVID or COVID-19 as of August 17, 2021.

95. Plaintiff had never tested "positive" for COVID-19 at any time prior to August 17, 2021.

96. Except on two occasions, 3/26/2020 and 10/8/2020 in connection with the quarantines identified above, at no time prior to August 17, 2021 had Plaintiff been required to submit to a PCR test or any other test that was ostensibly designed to determine if the person had COVID-19.

97. On August 19, 2021, Eden notified Plaintiff and all employees that Eden would be "reaching out weekly to employees who have not uploaded their vaccine cards in Apricity. These calls are to answer any questions about the policy, availability of reasonable accommodations for medical and religious reasons and to ensure we have accurate information for each employee."

**98. On August 20, 2021, Plaintiff received a call from Zoe Toledo, who Plaintiff believed to be a payroll temp for Eden, inquiring about Plaintiff's vaccine status, with the result that Ms. Toledo again e-mailed forms and instructions for claiming a "religious exemption" to Plaintiff (which Plaintiff had already received 8/17).**

**98A. At no time thereafter, or at any time before October 1, 2021 did Plaintiff receive a phone call or calls from Ms. Toledo or Eden or any representative or contractor of Eden, let alone on a weekly basis, in which the availability and threshold requirements of a religious accommodation was discussed with her.**

**98B. At no time thereafter, or at any time before October 1, 2021, did Plaintiff receive a phone call or any other communication from Ms. Toledo in which Eden disclaimed the necessity of submitting a "religious leader" statement as part of a request for religious accommodation.**

99. Plaintiff was not in ill health as of October 1, 2021 and had not suffered illness of any kind either preventing her from performing her job or known to have been transmitted to others during the period August 17, 2021 through September 30, 2021.

**99A.  At all times relevant to this action up to October 1, 2021, Plaintiff had received health care services as necessary from a health care provider of her choice**.

100.  Plaintiff had not contracted an illness that was identified as caused by a coronavirus as of October 1, 2021.

101.  Plaintiff had never tested positive for COVID-19 at any time prior to October 1, 2021.

102.  Plaintiff had taken precautions to avoid transmitting a virus including COVID-19, including by using the Apricity reporting tool and an employer-required face mask when dealing with the residents for whose units she had responsibility at Union Court and members of the public, at all times prior to August 17, 2021.

103.  Plaintiff continued to take precautions to avoid transmitting COVID-19 or any other virus by continued to use a face mask when dealing with residents for whose units she had responsibility at Union Court and members of the public between the dates of August 16, 2021 and October 1, 2021.

**103A.    After the date of implementation of the optional vaccination reporting requirement to Apricity referred to above and at all times during the months of August and September 2021, U.S. Healthworks as the operator of Apricity and a third party contractor of Eden, was in possession--and was necessarily by reason of Eden mandate in possession by way of either actual or implied consent of Plaintiff--of medical information of Plaintiff, including but not limited to information on her medical history and treatment as it pertained to such matters as her daily temperature, symptoms and whether she had or had not received an injection of a COVID vaccine.**

**104. At the time of her employment and at all times thereafter up to October 1, 2021, Eden was forbidden from making  any medical inquiry of an employee, including about the medical history of the employee and whether an employee had a medical condition, except upon a showing of job-relatedness or business necessity.**

105.  For Eden to either inquire or know about Plaintiff's vaccination status was not as of

COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT, WRONGFUL TERMINATION, AND DISCRIMINATION [etc.]

August 17, 2021 or any time thereafter reasonably related to the position that Plaintiff held with Eden.

106.   For Eden to either inquire or know about Plaintiff's vaccination status is not reasonably related to the position that Plaintiff held with Eden.

107.   For Eden to either inquire or know about Plaintiff's vaccination status is not necessary for the conduct of Eden's business.

108.   For Eden to either inquire or know about Plaintiff's vaccination status was not as of August 17, 2021 or at any thereafter necessary for the conduct of Eden's business.

109.   Shortly after August 17, 2021, Plaintiff began using her vacation time to take a vacation, which she had pre-planned months earlier without knowledge that Eden was going to impose a vaccination requirement on that same date.

**110.   Plaintiff had previously cleared her absence with Eden, and upon her return to Eden August 31 she was required to and did quarantine in her unit as she had been advised by Eden's human resources department, and submitted to a PCR test to Apricity which was negative.**

**111.   In connection with her upcoming travel Plaintiff on July 26, 2021 notified her supervisor and only one other person, Zoe Toledo, who she understood to be a temporary employee in the payroll department, that she, as of then unvaccinated,  would be traveling and returning from travel by domestic U.S. air carrier, to determine protocol on her return.**

**112.   There was no vaccination requirement as a condition of ongoing employment at Eden, and no such requirement in place for Plaintiff, at the time of either her notice given of July 26 or when she departed for her vacation August 17, 2021.**

**112A.   On information and belief, by the time that Zoe Toledo became aware that Plaintiff had not received the vaccination mandated by Eden, or shortly thereafter, she ceased being a temporary employee of Eden and became a third party vendor contracting for her services with Eden.**

**112B.** Zoe Toledo was a third party contractor of Eden for all or a significant portion of September 2021 immediately preceded the scheduling of an "exit interview" for Plaintiff.

**112C.** Zoe Toledo was given medical information of Eden employees and Plaintiff for the purposes identified in Paragraph 97 above.

**112D.** Plaintiff did not at any time prior to October 1, 2021 authorize Eden to provide any of her medical information, including but not limited to her medical history or vaccination history, or medical treatment information or lack thereof during a time when a requirement for such treatment had been imposed on her, to Zoe Toledo.

**112E.** Plaintiff did not at any time prior to October 1, 2021 authorize Eden to allow any of its contractors including U.S. Healthworks to provide to Zoe Toledo any of Plaintiff's medical information, including but not limited to her medical history or vaccination history, or medical treatment information or lack thereof during a time when a requirement for such treatment had been imposed.

113. Plaintiff knew immediately upon being told that Eden would impose a policy of mandatory vaccination for its employees that this would pose an issue of religious conscience for Plaintiff in that it implicated her moral and ethical system, beliefs about right or wrong, and life and death, and/or her beliefs about humanity's place in the cosmos.

114. Employees were advised in writing on or about August 17, 2021 that Eden would allow for employees to apply for exemption from its new vaccination requirement on the grounds of religion.

115. Employees were advised in writing on or about August 17, 2021 of what would be required for an employee to submit a request for a religion-based exemption to Eden's new vaccination requirement.

116. When Plaintiff investigated the materials provided to her and other employees as of August 2021 to see what steps would be required of her to qualify for a religion-based exemption,

she learned from the materials published to employees that she would have to submit a statement from a religious leader attesting to her religious beliefs.

117. **The written materials and electronic materials offered by Eden to its employees on August 17, 2021 on the steps for applying for a religious exemption stated that an employee's application for a religious exemption had to, on penalty of not being further processed, include a statement from a religious leader with a religious organization.**

118. The written materials and electronic materials Eden offered to employees on the steps for applying for a religious exemption at all times after August 17, 2021 up to October 1, 2021 stated that an employee's application for a religious exemption had to include a statement from a religious leader.

118A. **The written materials and electronic materials Eden offered to employees that are referred to in Paragraphs 116-118 above (hereinafter the "Materials") had been created or prepared by Schwartz.**

118B. **Alternatively to the contention set forth in Paragraph 118A, the Materials had prior to conveyance to Eden been approved by Schwartz.**

118C. **Alternatively to the contentions set forth in Paragraphs 118A and B, the form that was distributed to Plaintiff as part of the Materials, advising employees that completion of a statement from a religious leader was a precondition for further processing of a religious accommodation request, had been created or prepared by Schwartz.**

118D. **Alternatively to the contentions set forth in Paragraphs 118A, B and C, the form distributed to Plaintiff as part of the Materials, advising employees that completion of a statement from a religious leader was a precondition for further processing of a religious accommodation request, had been approved for use with Eden employees by Schwartz.**

118E. **At the time that Schwartz conveyed the Materials to Eden, Schwartz knew to a reasonable degree of certitude based on its expertise and based on the lack of expertise of Eden, and based on its history of advising Eden, that Eden would follow its recommendations**

COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT, WRONGFUL TERMINATION, AND DISCRIMINATION [etc.]

as to how to convey instructions to its employees about seeking religious accommodations from Eden's new vaccine requirement.

118F.  On information and belief, at the time that Schwartz conveyed the Materials to Eden, Schwartz knew to a reasonable degree of certitude based on its expertise and based on the lack of expertise of Eden, and based on its history of advising Eden, and based on a request for specific services, that Eden expected Schwartz to produce the instructions it would use in advising its employees about seeking religious accommodations from Eden's new vaccine requirement.

119.  Although Plaintiff wished to apply for a religious exemption, she believed she would be unable to do so because of Eden's requirement that she submit a statement confirming her religious beliefs from a religious leader.

120.  Eden in fact as of August 17, 2021 and thereafter through at least September 2021 made its application process for a religious exemption dependent on the employee's submission of a statement from a religious leader.

121.  At no time did Eden, or any of its contractors including but not limited to Zoe Toledo,  in a phone call or otherwise ever inform Plaintiff that its policy on religious-based exemption from its vaccine requirement would deviate from what Eden had distributed in writing.

122.  At no time did Eden, or any of its contractors including but not limited to Zoe Toledo,  in a phone or otherwise ever inform Plaintiff that she really did not have to have a statement from a religious leader to be considered for a religious accommodation to the vaccine requirement.

123.  After Plaintiff first became aware of the vaccine mandate, and although Plaintiff was taken aback by Eden's intrusion into an area as to which she believed she enjoyed privacy, or was entitled to it by law or her employment contract, she did not voice her objection, in the interest of maintaining her employment.

124. Eden again reminded Plaintiff in September 2021 that her employment was now conditioned on her being fully vaccinated, i.e. to receive an injected vaccination of a substance specified to be a COVID-19 vaccine.

125. Plaintiff determined that Eden was imposing on her in the form of mandatory vaccination a job requirement that conflicted with her religious beliefs and practices and observance.

126. Because Plaintiff was aware based on the materials issued by Eden on August 17, 2021 **and thereafter** of a requirement for a religious exemption that she could not meet, and from communications thereafter which had not altered the August 17 instructions in any way and based on a lack of communications which had altered those instructions, and because she felt forced to respond notwithstanding her medical privacy concerns, she informed Eden in September 2021 that she would not be vaccinated for personal reasons.

**126A. At no time after Plaintiff notified Eden of her vaccination intent did Plaintiff know that Zoe Toledo was or became a third party contractor and not an employee of Eden.**

127. Plaintiff believed she had no other recourse than to cite personal reasons for her intention to not be vaccinated, since as she understood Eden's communications her right to apply for a religious exemption was conditioned on a term she could not meet.

128. In September 2021 and acting under duress, Plaintiff disclosed to Eden her unvaccinated status and her intention to not be vaccinated, because of her fear of losing her employment if she did not.

**129. At all times beginning at least by August 20, 2021 when Plaintiff indicated that she was not vaccinated and did not believe she could qualify for a religious exemption, Eden had constructive knowledge of the possibility that Plaintiff had a religious objection to being injected with the COVID-19 vaccine.**

130. On information and belief, a majority of Eden's employees were vaccinated as of Plaintiff's notification in July 2021.

COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT, WRONGFUL TERMINATION, AND DISCRIMINATION [etc.]

131.  Alternatively to the contention set forth in Paragraph 129 above, at all times beginning with her reporting to Eden in September 2021, Eden had constructive knowledge of the possibility that Plaintiff had a religious objection to being injected with the COVID vaccine, inasmuch as a personal opposition can include religious opposition and since Eden limited its religious accommodation process to those adherents of religions who could identify a living "religious leader," and since Eden never inquired further about Plaintiff's opposition.

132.  Alternatively to the contentions set forth in Paragraphs 129 and 131 above, at all times after Plaintiff reported her intention to Eden, Eden would have had actual knowledge of Plaintiff's religious objection to being injected with a vaccine but for Eden's imposition of a "religious leader" requirement as a precondition for processing.

133.  Alternatively to or in addition to the contentions set forth in Paragraphs 129 and 131, and either in addition to or alternatively to the contention set forth in Paragraph 132 above, at all times after Plaintiff reported her objection to Eden, Eden should have had actual knowledge of Plaintiff''s religious objection to being injected with the vaccine before the deadline for applying for a religious accommodation, and would have had such knowledge had Eden or its representatives not failed to engage in an interactive process or negotiate with Plaintiff per its promise to all employees regarding her objection to vaccination.

134.  Although Plaintiff communicated to Eden in September 2021 that she did not intend to be vaccinated, at no time thereafter did Eden or Zoe Toledo request or hold a meeting or phone conference with Plaintiff to discuss the type of opposition she had.

135. At no time subsequent to Eden's publication and distribution of accommodation guidance August 17, 2021 or before October 1, 2021, with the exception of a short phone conversation with Ms. Toledo as noted above, did Eden or Zoe Toledo request or hold a meeting or phone conference with Plaintiff to discuss why Plaintiff was not already vaccinated or her intentions.

136. At no time after Plaintiff indicated she did not intend to be vaccinated did Eden

or any of its representatives advise Plaintiff that it would be possible for her to obtain a religious accommodation without submitting a statement from a religious leader.

136A. On information and belief, Eden during the month of September 2021 reached out to employees other than Plaintiff who had not submitted vaccination status, some of whom ultimately attained an exemption to the vaccine mandate due to their religious objection(s).

136B. On information and belief, Eden during the month of September 2021 reached out to employees other than Plaintiff who had indicated hesitancy to be injected with the vaccine, some of whom ultimately attained an exemption to the vaccine mandate due to their religious objection(s) without submitting a statement from a religious leader.

137. At all times after she told Eden that she did not intend to be vaccinated, Plaintiff made it clear to Eden that she would be willing to undergo reasonable regular testing for COVID-19 or some other reasonable protocol as an alternative to being injected.

138. Plaintiff offered a reasonable accommodation not causing undue hardship to Eden or attempted to do so, but Eden never acknowledged the offer.

139. Eden at no time addressed Plaintiff's statements that she would be willing to submit to regular testing or any other protocol as an alternative to injection.

140. Eden at no time after Plaintiff indicated her intent to not be vaccinated told Plaintiff what provision of her employment contract she would violate by declining to be injected.

141. Eden at no time to and through October 1, 2021 asked Plaintiff if she agreed to add a vaccination or injection term or condition to her employment contract.

142. Eden at no time ever asked from or obtained from Plaintiff a waiver of medical privacy expectations that she enjoyed under law or under the terms of her employment, on which she had reasonably relied, or as a matter of company policy.

143. Eden and its managers violated their own assurances to Plaintiff of the privacy of her medical information by sending an e-mail to at least four other employees that alerted

them that Plaintiff was being asked to attend an "exit interview" in relation to "Vaccine status" (the subject line of the e-mail message).

144.  On information and belief, notwithstanding the message communicated by Eden to its employees and to Plaintiff that vaccination was necessary for anyone who came into close proximity with either residents or (presumably vaccinated) fellow employees to prevent transmission, Eden was not requiring that all vendors and contractors and other third parties who dealt regularly with either Plaintiff or Eden staff be vaccinated or show proof of vaccination.

145.  Eden scheduled an exit interview for Plaintiff on October 1, 2021, which Plaintiff dutifully attended.

**146.  At or before the time of her 10/1/21 exit interview, Plaintiff was asked to relinquish her company issued mobile phone and keys to her office and living unit, which she did.**

147.  Neither at the time of her 10/1/21 exit interview or at any other time before that had Plaintiff been told that she was being terminated.

148.  The term "terminated" was not used by Eden at the time of her 10/1/21 exit interview or at any time leading up to that interview.

149.  Eden instead told Plaintiff at the time of her 10/1/21 exit interview that she was "voluntarily resigning," at which point Plaintiff firmly told Eden she disagreed with that characterization.

150.  Notwithstanding Plaintiff's refusal to resign, Plaintiff was all times thereafter prevented from fulfilling her duties and honoring her employment contract based on access to her office and home having been taken from her.

151.  At no time after Plaintiff said she was NOT resigning until 10/28/22, when counsel to Eden wrote a letter to Plaintiff's counsel, did Eden ever state that Plaintiff was terminated from or discharged from her employment with Eden.

**152. At no time between 8/17/21 and the date Plaintiff said she was NOT resigning did Eden or any of its representatives ever offer Plaintiff the chance to obtain a religious exemption from Eden's vaccination requirement without providing a letter from a religious leader.**

153. After Plaintiff was able through the auspices of counsel in October 2022 to explain to Eden why she had not complied with the vaccination requirement and to demand compensation, Eden **by Schwartz** confirmed on 10/28/2022 either overtly or by implication that Plaintiff was terminated, by inviting her to "reapply" to the extent a position of interest to her was available.

**153A. Schwartz in its October 28, 2022 letter ignored Plaintiff's protest about the precondition for processing consisting of submission of a "religious leader" statement.**

**153B. Although Plaintiff through counsel had focused on explaining to Eden the discrimination which did not allow her to seek an exemption, and had only purported to give partial information on her religious objection, Schwartz wrote disparaging and dismissively about Plaintiff's religious views.**

154. During her employment with Eden and until approximately 9/27/ 2021, Plaintiff was dependent on Eden for her income and living.

155. Plaintiff vacated her unit on or about 9/27/ 2021 as a result of notification to her of an exit interview.

156. During her residency at Union Court and her employment by Eden as an Assistant Manager/Night Manager, Plaintiff in exchange for her time and performance and presence was paid at the rates identified above, and provided a rent-free unit and certain benefits [principally certain life and health-related insurance coverage and retirement plan under 401(k)].

157. Eden valued the unit provided to Plaintiff at $633/month at the time of Plaintiff's initial occupancy.

158. On information and belief, the Union Unit had a fair market rental value of close to twice the amount of Eden's assigned rental value.

159. On information and belief, Plaintiff worked the expected 40-hour work week, or used vacation pay at the same rate of compensation, every week during the first nine months of 2021.

160. During her employment with Eden and until approximately 927/ 2021, Plaintiff was dependent on Eden for her place of living, in that Plaintiff was provided incident to her employment a housing unit at Union Court, Manteca, as specified above.

WHEREFORE, PLAINTIFF REQUESTS relief as hereinafter set forth.

FIRST CAUSE OF ACTION - **EDEN** - DISCRIMINATION BASED ON RELIGION TITLE VII OF CIVIL RIGHTS ACT - [42 U.S.C. SECTION 2000e-2(a)(1), (2); 2000e(j)]

161. Plaintiff refers to Paragraphs 1 through 160 set forth above and hereby incorporate the allegations set forth therein into this cause of action by reference as though fully set forth herein.

162. Plaintiff first attempted to make a claim for discrimination based on religion with the State of California Fair Employment and Housing Authority acting as agent for the federal Equal Employment Opportunity Commission on about March 7, 2022, but she was told both that she did not have a claim and that no investigation would ensue.

163. After Plaintiff ultimately convinced both FEHA and EEOC that she had a religious discrimination claim, Plaintiff obtained a Right to Sue letter from the federal Equal Employment Opportunity Commission based on religious discrimination on March 7, 2023, and true and correct copies of her complaint and Right to Sue letter are attached hereto as Exhibits 1 and 2 respectively.

164. Plaintiff timely filed a charge of discrimination by virtue either of her claim made after the first written confirmation of her discharge October 28, 2022, or her improperly rejected attempt made in March 2022 pursuant to which EEOC would be and should be estopped from claiming untimeliness.

COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT, WRONGFUL TERMINATION, AND DISCRIMINATION [etc.]

165.  Plaintiff's religious creed or beliefs did not allow her to receive the vaccination injection that Eden was requiring of her at all times after August 17, 2021.

166.  The categorical requirement by Eden that all of its employees be injected with a vaccine, even if employee-neutral on its face, caused a disparate impact on Plaintiff by forcing her to abandon her religious objection of forego employment with Eden.

167.  Plaintiff did not submit to the injection of the COVID-19 vaccine and informed Eden in advance of its deadline that she would not do so.

168.  At all times after August 17, 2021 and otherwise relevant hereto, Eden had an obligation to its employees to offer reasonable accommodation to employees who were unable to perform or comply with a job requirement deemed by Eden to be essential to the job on the ground of religion.

169.  At all times up to October 28, 2022 when Eden first documented a termination of Plaintiff, Eden owed Plaintiff the opportunity to seek a reasonable accommodation on the ground of any religious objection she might have to Eden's vaccination requirement.

170.  At all times up to October 1, 2021 when Eden required Plaintiff to relinquish her employment and residence, Eden owed Plaintiff the opportunity to seek a reasonable accommodation on the ground of any objection she might have to Eden's vaccination requirement.

171.  By holding out the possibility of accommodation in the form of exemption from its vaccination requirement to only employees who recognized a "religious leader," Eden unlawfully discriminated against the religion of Plaintiff and against Plaintiff.

172.  By holding out the possibility of accommodation in the form of exemption from its vaccination requirement to only employees who were able to obtain a written statement from a "religious leader," Eden unlawfully discriminated against the religion of Plaintiff and against Plaintiff.

173.  On information and belief, Eden on or before October 1, 2021 granted exemptions

COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT, WRONGFUL TERMINATION, AND DISCRIMINATION [etc.]

to employees other than Plaintiff on the grounds that they articulated an objection to Eden's vaccination requirement based on religious reasons.

174. On information and belief, Eden on or after October 1, 2021 granted exemptions to employees other than Plaintiff on the grounds that they articulated an objection to Eden's vaccination requirement based on religious reasons.

175. By granting exemptions based on a stated religious objection from its vaccination requirement to employees other than Plaintiff, but not to Plaintiff, Eden unlawfully discriminated against the religion of Plaintiff and Plaintiff.

176. From August 17, 2021 through October 28, 2022, Eden refused to accommodate or provide the opportunity for an accommodation to Plaintiff's religious beliefs and practices.

177. Whether because of prejudice based on a preexisting belief since either July 2021 or early September 2021 that Plaintiff was likely opposed or opposed to vaccination, or otherwise, Eden's treatment of Plaintiff at all times after Plaintiff reported her opposition was one of deliberate inaction and disinterest in determining the basis for Plaintiff's opposition to the vaccination requirement.

178. Whether because of prejudice based on a preexisting belief that Plaintiff was likely opposed or opposed to vaccination, or otherwise, Eden's treatment of Plaintiff at all times after Plaintiff reported her opposition was one of deliberate lack of communication with Plaintiff.

179. Eden knowingly interfered with or obstructed Plaintiff's right to assert a well-grounded basis for a religious accommodation to its vaccination requirement based on its failure to offer Plaintiff the option of establishing her opposition without a "religious leader" statement, or by its failure in her case to either clarify or waive that requirement.

180. Eden knowingly interfered with or obstructed Plaintiff's right to assert a well-grounded basis for a religious accommodation to its vaccination requirement based on its deliberate inaction and failure to communicate with Plaintiff at any time after being told that

Plaintiff was not vaccinated, and/or after being told that she declined to get vaccinated based on personal reasons.

181. From August 17, 2021 through October 28, 2022, Plaintiff was qualified and remained qualified for the position of Assistant Manager/Night Manager based on her job performance, experience, character and other traits leading to her original hire, and her favorable evaluations.

182. Eden's policy and practice requiring its employees to receive a vaccine injection to stay employed caused Plaintiff to lose the employment she desired to keep as of October 1, 2021.

183. Eden's policy and practice requiring its employees to receive a vaccine injection or else forfeit employment caused Plaintiff to be discharged as of October 28, 2022 from the employment she had desired to keep.

184. Eden's policy and practice requiring its employees to receive a vaccine injection had a disparate impact on Plaintiff and, on information and belief,  other Eden employees with religious beliefs who did not belong to a formal religious organization or did not have a religious leader, whereas Eden employees who did belong to a formal religious organization or who had a religious leader were not disadvantaged.

185. Eden's policy and practice by which its employees were prevented from seeking religious accommodation to its vaccine requirement absent a supporting statement from a religious leader had a disparate impact on Plaintiff and, on information and belief, other Eden employees with religious beliefs who did not belong to a formal religious organization or did not have a religious leader, whereas employees who did belong to a formal religious organization or who had a religious leader were not disadvantaged.

186. Eden's policy and practice by which employees were required to disclose their vaccination status to Eden caused Plaintiff to lose the employment she desired to keep as of October 1, 2021.

COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT, WRONGFUL TERMINATION, AND DISCRIMINATION [etc.]

187. Eden's policy and practice requiring its employees to report to Eden whether they had received vaccination against COVID-19 caused Plaintiff to lose the employment she desired to keep as of October 1, 2021.

188. Eden's policy and practice by which employees were required to disclose their vaccination status to Eden caused Plaintiff to be discharged from the employment she desired to keep as of October 28, 2022.

189. Eden's policy and practice requiring its employees to report to Eden whether they had received vaccination against COVID-19 caused Plaintiff to be discharged from the employment she desired to keep as of October 28, 2022.

190. Eden's policy of requiring a statement from a religious leader as a threshold for seeking an exemption to its vaccine requirement was not justified by business necessity.

191. Eden's policy of requiring all employees to be vaccinated against COVID-19 was not justified by business necessity.

192. Eden's policy of requiring all employees to disclose their vaccination status to Eden was not justified by business necessity.

193. Receiving a vaccine injection for COVID-19 was neither necessary or helpful to Plaintiff with regard to the performance of any of her duties as Assistant Manager/ Night Manager, nor did it assist her in or enhance her ability to perform those duties.

194. The imposition on Plaintiff of a vaccine injection for COVID-19 was not necessary to prevent illness to any person with whom Plaintiff regularly or occasionally interacted in the performance of her job duties as Assistant Manager/Night Manager.

195. The imposition on Plaintiff of a vaccine injection for COVID-19 was not necessary to prevent illness to any person with whom Plaintiff regularly or occasionally interacted in a way significantly different from or more compelling than other steps that Plaintiff could been asked to take and was willing to take to minimize the risk of transmission of a coronavirus.

196. As a proximate result of Eden's discriminatory action against Plaintiff culminating in written notice of termination of employment on or about October 28, 2022, Plaintiff was harmed in that Plaintiff suffered the loss of wages, housing and other benefits for all days after September 30, 2021 up to and including the present, in an amount according to proof.

197. As a proximate result of Eden's discriminatory action against Plaintiff culminating in written notice of termination of employment on or about October 28, 2022, Plaintiff has been further harmed in that she has suffered the intangible loss of prospective or future employment opportunities relating to the building of a resume showing continuous experience in a responsible position beyond the two-plus years she was allowed to continue her employment with Eden.

198. As a proximate result of Eden's discriminatory action against Plaintiff culminating in her termination, Plaintiff has also suffered loss of enjoyment of life, inconvenience, humiliation, mental anguish and emotional distress, compensable in an amount according to proof.

199. Plaintiff can no longer be made whole if the ongoing employment opportunity that Eden denied to Plaintiff were to be the subject of injunctive relief.

200. Had she not been forced to leave her employment October 1, 2021 Plaintiff would have received compensation from Eden for the period  from that date through October 28, 2022 in the amount of no less than $43,164 not including the value of the housing she lost.  .

201. Had Plaintiff's employment not been terminated October 28, 2022, Plaintiff would have received compensation after that date up to the date of this Complaint in an amount of no less than $19,824.

202. Plaintiff has incurred expenses, chiefly medical expenses, in an amount according to further proof, to replace the employment benefits taken away from Plaintiff as of October 1, 2021.

203. Plaintiff has been unable to contribute to any retirement plan or obtain employer

COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT, WRONGFUL TERMINATION, AND DISCRIMINATION [etc.]

benefit contributed to any retirement plan from her since October 1, 2021, having a value according to further proof.

204.  Plaintiff has incurred expenses of no less than $600 per month to replace the housing taken away from Plaintiff as of October 1, 2021 with non-equivalent and less desirable housing.

205.  As a result of being asked to leave her apartment in September 2021, Plaintiff was forced to return to live with her aunt at the address where she lived immediately prior to moving to the Union Unit, and continues to live there at the time of this complaint.

206.  In order to have obtained housing that was equivalent in type and desirability to the Union Unit during the period form October 1, 2021 through the time of the filing of this complaint Plaintiff would have had to spend at least $600 per month more than what she could afford to pay and has been paying.

207.  Plaintiff expects that the reasonable cost of housing equivalent in type and desirability to the housing that she lost until she obtains a judgment in this matter will continue to be $1200/month.

208.  Plaintiff did not find new employment until 5/9/22, and at that time  found employment of 27 hours a week, and she continues to work at that position as an assistant manager.

209.  At the time of her 5/9/22 hire by her new employer Plaintiff was compensated at the rate of $15/hour, and she has received only one raise to $16/hour, with approximately three (3) hours of overtime each week at the rate of $24.

210.  Plaintiff was deprived on October 28, 2022 of her employment with Eden on the basis of her religion pursuant to 42 Section 2000e-2(a)(1) and/or in violation of the disparate impact prohibition of Section 2000e-(2)(a)(2).

211.  Alternatively to the contention set forth in Paragraph 210, Plaintiff was deprived on October 1, 2021 of her employment  with Eden on the basis of her religion pursuant to 42

Section 2000e-2(a)(1) and/or in violation of the disparate impact prohibition of Section 2000e-(2)(a)(2).

212.  The discriminatory actions of Eden and inaction of Eden as set forth above were a substantial factor in causing the harm experienced by Plaintiff as identified herein.

213.  Within days of notifying Plaintiff of her exit interview, Eden sent out a message to all employees notifying them of its urgent need for managerial employees and offering to pay employees a $1,000 bonus for referral of an individual who Eden determined to hire.

WHEREFORE, Plaintiff requests relief as set forth below.


SECOND CAUSE OF ACTION - **EDEN** - RETALIATION FOR ASSERTING RIGHTS
TITLE VII OF CIVIL RIGHTS ACT - [42 U.S.C. SECTION 2000e-3(a)]

214.  Plaintiff refers to Paragraphs 1 through 213 set forth above and hereby incorporate the allegations set forth therein into this cause of action by reference as though fully set forth herein.

215.  Plaintiff was notified in writing of her termination for the first time by way of letter from Eden by means of its attorney sent on or about October 28, 2022.

216.  Plaintiff's termination became effective in Eden's writing of October 28, 2022.

217.  Prior to Eden's issuance of the termination letter of October 28, 2022, Plaintiff had protested through counsel the handling of the imposed vaccination requirement.

218.  Prior to Eden's issuance of the termination letter of October 28, 2022, Plaintiff made Eden aware of her religious-based opposition to the vaccination requirement.

219.  Prior to Eden's issuance of the termination letter of October 28, 2022, Plaintiff protested Eden's failure to provide her with lawful information regarding the availability of an accommodation and exemption from the requirement for persons with bona fide religious beliefs.

220.  Prior to Eden's issuance of the termination letter of October 28, 2022, Eden knew

or suspected that Plaintiff might have convictions or beliefs or practice or observance for which an accommodation not posing undue hardship was possible.

221.  Despite having the knowledge of or reason to suspect Plaintiff's religious beliefs as set forth in Paragraphs 131ff and 220 above, Eden did not attempt to make accommodation for Plaintiff.

222.  Plaintiff was deprived on October 28, 2022 of her employment with Eden on the basis of her religion in retaliation for Plaintiff's assertion of her rights under the federal Civil Rights Act and its provisions concerning accommodation on grounds of religion.

223.  The information Eden received about Plaintiff shortly before October 28, 2022 was a motivating factor in Eden's decision to discharge Plaintiff from her employment.

224.  Alternatively to Paragraph 221 set forth above, prior to telling Plaintiff to report for an exit interview, Eden knew or suspected that Plaintiff might have convictions or beliefs or practices or observance for which an accommodation not posing undue hardship was possible.;

225.  Despite having the knowledge of or reason to suspect Plaintiff's religious beliefs as set forth in Paragraphs 131ff and 224 above, Eden did not attempt at any time before scheduling Plaintiff's exit from employment and housing to make accommodation for Plaintiff.

226.  Alternatively to Paragraph 222,  Eden discharged Plaintiff on or about October 1, 2021 in retaliation for what Eden believed would likely be an assertion by Plaintiff of her rights under the federal Civil Rights Act and its provisions concerning accommodation on grounds of religion.

227.  The information Eden received from Plaintiff in September 2021 about her unwillingness to vaccinate based on her convictions, and not merely her choice to remain unvaccinated, was a motivating factor in Eden's decision to discharge Plaintiff from her employment.

WHEREFORE, Plaintiff requests relief as set forth below.

COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT, WRONGFUL TERMINATION, AND DISCRIMINATION [etc.]

THIRD CAUSE OF ACTION - **EDEN** - DISCRIMINATION BASED ON RELIGION

UNRUH CIVIL RIGHTS ACT (Cal. Civil Code Section 51); and

Cal. Gov. Code Sections 12926(q), 12940(a), 12965(b)

228.   Plaintiff refers to Paragraphs 1 through 227 set forth above and hereby incorporates the allegations set forth therein into this cause of action by reference as though fully set forth herein.

229.   Eden and its actions are covered by the California Fair Employment and Housing Act of 1959, Govt. Code Section 12900 et seq. .

230.   Plaintiff is a member of a group protected by the California Fair Employment and Housing Act.

231.   Plaintiff has satisfied the administrative prerequisite for filing this action by filing with Department of Fair Employment and Housing a timely complaint or charge relating to the discrimination she experienced, a copy of which is attached hereto as Exhibit 1.

232.   A "right to sue letter" from the Department of Fair Employment and Housing ("DFEH") was issued in the form of the letter by Equal Employment Opportunity Commission acting as agent or representative for DFEH provided to Plaintiff on or about March 7, 2023, a copy of which is attached hereto as Exhibit 2. .

233.   Eden unlawfully discriminated against Plaintiff on the basis of her religion under California law by discharging her on or about October 28, 2022.

234.   Alternatively to the foregoing contention, Eden unlawfully discriminated against Plaintiff on the basis of her religion under California law by constructively discharging her on or about October 1, 2022.

235.   The discriminatory actions of Eden and inaction of Eden as set forth above were a substantial factor in causing the harm experienced by Plaintiff as identified above and as cognizable per California law.

WHEREFORE, Plaintiff requests relief as set forth below.

FOURTH CAUSE OF ACTION - **EDEN** - RETALIATION FOR ASSERTING RIGHTS

Cal. Gov't. Code Section 12940(l)(1), (4)

236.  Plaintiff refers to Paragraphs 1 through 235 set forth above and hereby incorporates the allegations set forth therein into this cause of action by reference as though fully set forth herein.

237.   Eden discharged Plaintiff on or about October 1, 2021 in retaliation for what Eden believed would likely be an assertion by Plaintiff of her rights under state civil rights law and its provisions concerning accommodation on grounds of religion.

238.  The information Eden received from Plaintiff in September 2021 about her unwillingness to vaccinate based on her convictions, and not merely her choice to remain unvaccinated, was a motivating factor in Eden's decision to discharge Plaintiff from her employment.

239.  Alternatively to Paragraph 237,  Plaintiff was deprived on October 28, 2022 of her employment with Eden on the basis of her religion in retaliation for Plaintiff's assertion of her rights under state civil rights law and its provisions concerning accommodation on grounds of religion, or on what Eden believed would be or might be her assertion of such rights.

240.  The information Eden received about Plaintiff's religious motivation for remaining unvaccinated shortly before October 28, 2022 was a motivating factor in Eden's decision to discharge Plaintiff from her employment.

WHEREFORE, Plaintiff requests relief as set forth below.

FIFTH CAUSE OF ACTION - **EDEN**

BREACH OF CONTRACT

241.  Plaintiff refers to Paragraphs 1 through 240 set forth above and hereby incorporate the allegations set forth therein into this cause of action by reference as though fully set forth herein.

242.  As of March 2020 Eden and Plaintiff had established a course of reciprocal conduct and fulfilled expectation that led to the creation of an implied employment contract between Eden and Plaintiff.

243.  As of August 1, 2021 Eden and Plaintiff had established a course of reciprocal conduct and fulfilled expectation that confirmed or continued to support the existence of an implied contract between Eden and Plaintiff.

244.  At all times between January 2021 when she was performing duties as Eden's Night Manager, and August 17, 2021, Plaintiff had been led to believe by Eden that her position was hers as long as she wanted it and as long as she kept performing her job duties as well as she had done up that point.

245.  At all times between the date she was first employed  in 2018 and August 15, 2021, Plaintiff had been led to believe by Eden that her right of medical privacy would be respected by Eden.

246.  At all times between the date she was first employed in 2018 and August 15, 2021, Plaintiff had been led to believe that she had the right to exercise control over her body and the freedom to make her own  health care choices.

247.  At all times between the date she was first employed in 2018 and August 17, 2021, Plaintiff had been led to believe that Eden would not require of her an act that could possibly or was likely imperil her health.

248.  At all times between the date she first first employed in 2018 and August 17, 2021, Plaintiff had the reasonable expectation that no component of her employment contract whether verbal or written would be changed or construed so as to require that, as a condition of continuing employment, she take any action that could imperil her health unless she agreed to exercise her own discretion and her choice to take that action.

249.  **Plaintiff relied to her detriment** on all the expectations created as set forth above

including what she had been led to believe whether through express or implied statement or conduct on the part of Eden.

250.  Plaintiff had relied in accepting the position of Assistant Manager/Night Manager in December 2018 and at all times thereafter in continuing in that position on the rights of medical privacy and freedom to make her own health care choices that Eden had extended to her.

251.  The requirement by Eden that Plaintiff obtain a vaccine injection was a term that Eden regarded as a new and material term of its employment contract with Plaintiff.

252.  Eden breached its employment contract with Plaintiff by insisting that Plaintiff comply with a new and material term of the contract that Plaintiff did not consent to, namely that she subject herself to a vaccine injection.

253.  Eden also breached its employment contract with Plaintiff by requiring that Plaintiff disclose information against its own policies, known to Plaintiff, of medical privacy, without Plaintiff's consent.

254.  Eden also breached its employment contract with Plaintiff by sharing confidential information about Plaintiff's medical status and employment status and how the two were related, specifically her unvaccinated status leading to her anticipated or actual loss of employment, with employees and/or third parties not entitled to know.

255.  Alternatively to the contention set forth in Paragraph 254 above, Eden breached its employment contract with Plaintiff by requiring that Plaintiff subject herself to a vaccine which had not been tested as fully as vaccines are normally tested and which had not received any approval from the United States Food and Drug Administration except by an emergency use authorization.

256.  Alternatively to the contention set forth in Paragraph 255 above, Eden breached its employment contract with Plaintiff by requiring that Plaintiff subject herself to a vaccine which has been shown to carry with it more than the usual risk of adverse health effects.

COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT, WRONGFUL TERMINATION, AND DISCRIMINATION [etc.]

257. But for Eden's unapproved insistence on disclosure of private medical information Eden would not have been in a position to impose penalties on Plaintiff for noncompliance with a new term of the contract or impose a requirement that Plaintiff obtain a vaccine injection. .

258. In doing the acts set forth above, Eden knew that Plaintiff retained the right of medical privacy but consciously violated that right based on interests other than Plaintiff's.

259. But for Eden's unapproved insistence that Plaintiff undertake a risk to her own health by injection of a substance that did not have full FDA authorization, Eden would not have been in a position to impose penalties on Plaintiff with noncompliance with a new term of the contract or impose a requirement that Plaintiff get vaccinated against COVID-19.

260. In doing the acts set forth above, Eden knew that the act they were requiring of Plaintiff was not consistent with their preexisting contract with her, but nonetheless forced Plaintiff to either subscribe to a modified contract or new terms, or lose her job.

261. In light of the history of Plaintiff's employment and the fact that she had always received favorable performance reviews, and in light of the responsibility inherent in her position and the fact that she had not been expressly informed at any time that her position as Assistant Manager/Night Manager was "at will," Eden had impliedly agreed to not terminate Plaintiff without cause.'

262. Plaintiff reasonably relied on the employer's written policies and course of dealing to conclude that Plaintiff and Eden had entered into an implied contract that she would not be terminated or that her employment would not be ended absent good cause.

263. Based on the oral representations of Eden and the written policies provided to her, Plaintiff had an employment contract with Eden that she would be employed by Eden so long as her performance was satisfactory, and that Eden would not terminate her employment without good and just cause.

264.  Plaintiff at all times fulfilled all her duties under the employment contract she had for Assistant Manager/ Night Manager, and all conditions of the contract she entered into, and remained ready, willing and able to continue performing them in a competent and satisfactory manner at the time she was forced to relinquish her position and also at the time she was told in writing that she had been terminated.

265.  Notwithstanding the implied contract to terminate Plaintiff's employment only for good cause, Eden discharged Plaintiff from her employment solely because she had exercised her right to not undergo a forced vaccine injection.

266.   Eden discharged Plaintiff from her employment without specifying any grounds for the termination based on poor performance, and despite the fact that Plaintiff had consistently received favorable evaluations of her performance.

267.  Eden lacked good cause for not offering Plaintiff continuing employment after October 1, 2021.

268.  Eden lacked good cause for discharging Plaintiff from its employ on October 28, 2022.

269.  Alternatively to paragraph 268 set forth above, Eden lacked good cause for actually or constructively discharging Plaintiff from its employ on or about October 1, 2021.

270.  As a proximate result of Eden's breaches Eden ended Plaintiff's employment and housing benefit and all other benefits October 1, 2021, and ultimately confirmed in writing for the first time the termination of Plaintiff's employment October 28, 2022.

271.   As a proximate result of Eden's conduct, Plaintiff has suffered lost earnings and loss of the other benefits, as well as humiliation, mental anguish, inconvenience and loss of enjoyment of life as set forth in Paragraphs 196 through 209 above and subject to further proof at trial.

272. But for the breaches by Eden of its contract with Plaintiff as set forth above, Plaintiff would not have suffered the harm itemized herein.

WHEREFORE, Plaintiff requests relief as set forth below.

SIXTH CAUSE OF ACTION - **EDEN**

BREACH OF CONTRACT / COVENANT OF GOOD FAITH AND FAIR DEALING

273. Plaintiff refers to Paragraphs 1 through 272 set forth above and hereby incorporates the allegations set forth therein into this cause of action by reference as though fully set forth herein.

274. As of October 1, 2021, Plaintiff had complied with all of her duties and obligations under her contract of employment with Eden.

275. As of October 28, 2022, Plaintiff had complied with all of her duties and obligations under her contract of employment with Eden.

276. At all times after entering into an employment contract with Eden, Eden had an obligation to act fairly and deal in good faith with regard to Plaintiff and her employment.

277. There were no conditions attached to the obligation of Eden to act fairly and in good faith with regard to Plaintiff and her employment.

278. Alternatively to the contention set forth above, to the extent any conditions attached to the obligation of Eden to act fairly and in good faith toward Plaintiff, those conditions had either been satisfied or rendered inapplicable by Plaintiff's satisfaction of same.

279. Eden did not act fairly or deal in good faith toward Plaintiff, by giving her an ultimatum that she receive an injection within 45 days, or some lesser portion of that time period according to proof, or lose her employment.

280. Eden did not act fairly or deal in good faith toward Plaintiff for the reasons set forth in at least one or more of the following contentions set forth above: Paragraphs 121, 133-143, 175 through 179, 220, 224, and Paragraphs 253 through 256 or one of them.

281. As a result of Eden's violation of the duty to act in good faith and with fair dealing in regard to Plaintiff and her employment, Plaintiff was harmed as more fully set forth in Paragraphs 196 through 209 above.

WHEREFORE, Plaintiff requests relief as set forth below

## SEVENTH CAUSE OF ACTION - **EDEN**
## WRONGFUL DISCHARGE VIOLATING PUBLIC POLICY

282. Plaintiff refers to Paragraphs 1 through 281 set forth above and hereby incorporate the allegations set forth therein into this cause of action by reference as though fully set forth herein.

283. It is not disputed that at all times relevant hereto there has been a public policy governing the duty of an employer to keep the medical information of its employees private and limiting the uses thereof.

284. Up until August 17, 2021, Eden repeatedly recognized that a public policy applicable to medical privacy applied to Eden's treatment of its employees, in the communications addressed to Plaintiff and other employees as set forth above.

285. The actions of Eden in ordering Plaintiff to undergo a forced vaccine injection as a condition of her employment, and report to Eden whether she had done so and then imposing a penalty of loss of job and benefits on her if she did not, required Eden to violate public policy protecting Plaintiff's right of medical privacy.

286. The action of Eden in ordering Plaintiff to disclose during the course of her employment whether she had undergone a vaccination that was not a threshold requirement for her employment and then using that information to terminate her benefits and employment, was a violation of one or more provisions of federal HIPAA law ("Health Insurance Portablity and Accountability Act of 1996").

287. Alternatively, the action of Eden in asking Plaintiff the reason why she had not

been vaccinated, even if ostensibly in order to make available an accommodation or benefit to her, and then using that information or lack thereof to terminate her benefits and employment was a violation of federal HIPAA law.

288.  As a proximate result of Eden's orders and Plaintiff's resistance to those orders, and in violation of public policy as set forth above, Eden terminated the employment of Plaintiff on or about October 28, 2022.

289.  Alternatively, as a proximate result of Eden's orders and Plaintiff's resistance to those orders in violation of public policy as set forth above, Eden effectively terminated the employment of Plaintiff on October 1, 2021.

290.  Alternatively to paragraphs 286 and 287 above,  Eden's discharge of Plaintiff either on October 1, 2021 or October 28, 2022 was a violation of well-recognized public policy that respects a woman's right to control her own body.

291.  Alternatively to paragraphs 286, 287 and 290 above, Eden's discharge of Plaintiff either on October 1, 2021 or October 28, 2022 was a violation of public policy that respects a person's right to choose when and if to inject a substance that might cause or is likely to cause some harmful effect of whatever scope.

292.   As a consequence of Eden's wrongful discharge of her, Plaintiff has suffered harm as set forth above and as specifically pled in Paragraphs 196 through 209 above.

WHEREFORE, Plaintiff requests relief as set forth below.

## EIGHTH CAUSE OF ACTION  - EDEN - BREACH OF DUTY RE: MEDICAL PRIVACY

### (Cal. Civil Code Section 56.20, 56.35)

293.  Plaintiff refers to Paragraphs 1 through 292 set forth above and hereby incorporate the allegations set forth therein into this cause of action by reference as though fully set forth herein.

294. Zoe Toledo, at a time where she was a third party contractor with Eden and at a time when Plaintiff had not authorized her to obtain, possess or view her medical information, obtained and viewed the medical information in electronic format obtained from U.S. Healthworks through Apricity from Plaintiff, including but not limited to Plaintiff's history as it related to undergoing COVID vaccination or not having done so.

295. At least some of the information received by Zoe Toledo or subsequently generated or maintained by Zoe Toledo relating to Plaintiff's private medical information became the private property of Zoe Toledo, to which Eden had and has no contractual or other right of access.

296. On information and belief, Zoe Toledo at a time where she was a third party contractor with Eden used the private medical information of Plaintiff obtained from Eden, namely that Plaintiff had not been vaccinated with a COVID vaccine contrary to the requirement of said medical treatment imposed as a condition for her employment, to make a determination adverse to Plaintiff.

297. On information and belief, and alternatively to or in addition to the contention set forth above, Zoe Toledo on and after August 20, 2021 at a time where she was a third party contractor with Eden used the private medical information of Plaintiff, namely that Plaintiff had not been vaccinated with a COVID vaccine contrary to the requirement that said medical treatment be imposed as a condition for her ongoing employment, first to inquire as to why Plaintiff had not been vaccinated, and then to make a determination that neither she nor any other Eden representative would engage in follow-up conversations with Plaintiff about her reasons for not having undergone a COVID vaccine injection, and/or whether she might have a religious basis for her objection and whether there were any accommodations that could possibly be made in order to maintain Plaintiff's employment.

298. On information and belief, Zoe Toledo and/or Eden after August 20, 2021 did follow up with employees other than Plaintiff as to their reasons for not being vaccinated, including where it could not be conclusively determined, as with Plaintiff, that the employee's reasons were not religious.

299. On information and belief, the result of the follow-up with other employees in at least one case resulted in a religious accommodation which had not previously been sought.

300. The actions or inaction of Zoe Toledo contributed to the decision by Eden to end Plaintiff's employment on the ground that Plaintiff had failed, without grounds and without making a showing that she deserved a reasonable accommodation, to receive an injection of COVID vaccine.

301. Because of the actions or inaction of Zoe Toledo acting as contractor for, agent for and representative of Eden, Plaintiff was damaged in that she lost her employment, housnig and benefits, and has had to find less lucrative employment, as quantified in the Prayer for Relief below.

302. The actions or inaction of Zoe Toledo at a time when she was contractor for, agent for and representative of Eden were a substantial factor in the harm caused to Plaintiff as detailed in Para. 301 and in the Prayer for Relief below.

WHEREFORE, Plaintiff requests relief as set forth below.

## NINTH CAUSE OF ACTION - SCHWARTZ -
## AIDING AND ABETTING DISCRIMINATORY WRONGFUL TERMINATION

303. Plaintiff refers to Paragraphs 1 through 302 set forth above and hereby incorporate the allegations set forth therein into this cause of action by reference as though fully set forth herein.

304.  At all times prior to conveying the Materials to Eden, Schwartz knew that to implement, enforce and fail to disclaim the instructions within the Materials would constitute discrimination by Eden against persons with religious beliefs who did not have a living religious leader who could attest to those beliefs.

305.  Alternatively to the contention set forth above, at all times prior to conveying the Materials to Eden, Schwartz should have known by virtue of its expertise in the legal subject matter and therefore had constructive knowledge, of the fact that to implement, enforce and fail to disclaim the instructions within the Materials would discriminate by Eden against persons with religious beliefs who did not have a living religious leader who could attest to those beliefs.

306.  On information and belief, at no time before the deadline for requesting an exemption to the vaccine mandate did Schwartz instruct or counsel Eden to issue a disclaimer to Plaintiff or Eden employees generally that it was not a precondition for further processing of an accommodation request that the employee submit a religious leader statement.

307.  The assistance that Schwartz gave to Eden in the implementation and oversight of Eden's program to receive and determine requests for accommodations to Eden's vaccine requirement was substantial.

308.  Among other things, Schwartz entered into one or more arguments with one or more Eden employees as to the bona fides of the employee's exemption request, or instructed Eden to do or recommended that Eden do so giving Eden data which Schwartz believed would undermine the claim of a bona fide religious exemption.

309.  As an example of the actions of Schwartz described in the foregoing paragraph, Schwartz instructed or recommended to Eden on at least one occasion that where a Roman Catholic employee requested a religious accommodation, Eden should notify the employee that the ultimate church authority, Pope Francis, had endorsed the

use of the COVID vaccine, and has described receiving the injection as an "act of love;" a communication which Eden then sent to its employee under the name Diane Paisley and no other name.

310.  Eden would not have been able to implement a program of soliciting and determining requests for accommodation to Eden's vaccine requirement, without the assistance of Schwartz.

311.  The conduct of Schwartz in either creating or preparing or approving the Materials was a substantial factor in the harm caused to Plaintiff, namely the discontinuation and the termination of Plaintiff's employment with Eden.  .

312.  The conduct of Schwartz in either creating or preparing or approving the instruction regarding the necessity of a "religious leader" statement as a precondition for processing of an accommodation request was a substantial factor in the harm caused to Plaintiff, namely the termination of Plaintiff's employment with Eden.

313.  Schwartz acted on Eden's behalf in ultimately conveying the decision to Plaintiff that she had been terminated, by letter dated October 28, 2022.

314.  Schwartz in its October 28, 2022 letter characterized Plaintiff's claim in disparaging terms, as a claim that did not "relate ultimate ideas about life, purpose and death," even though Plaintiff had explicitly stated by prior letter to Eden through her attorney that she was providing limited detail regarding her beliefs for the purpose of demanding compensation for her termination, and that the real issue had been the discrimination that was implicated by Eden in not offering persons without a religious leader the opportunity to request a religious accommodation that the employee could be assured would be processed, but instead promising processing only to those who submitted a statement from a religious leader with a religious organization. .

WHEREFORE, Plaintiff requests relief as set forth below.

PRAYER FOR RELIEF

That the court enter judgment against Eden and in favor of Plaintiff on all causes of action **except the Eighth and Ninth Causes** as noted below in the following amounts:

1.  For back pay, lost compensation and other monetary relief corresponding to benefits lost in the sum of at least $62,988  according to further proof;

2.  For front pay and compensation not replaced by Plaintiff in the amount of at least $45,000 subject to further proof;

3.  For special damages in the amount of no less than $11,394 according to further proof corresponding to the value of the housing lost by Plaintiff;

4.  For special damages in the amount of at least $10,800 according to further proof corresponding to the additional market cost of replacing the housing lost by Plaintiff;

5.  For general damages for mental anguish and humiliation in the amount of at least $100,000 subject to further proof;

6.  For interest on the damages owed calculated from October 1, 2021 to the date of judgment;

7.  For costs of suit incurred herein;

8.  For attorney's fees pursuant to 42 U.S.C. Section 2000e-5(k) on either of the first two causes of action, or under Government Code Section 12965(c)(6) on either of the third or fourth causes of action; and

**9.  On the Eighth Cause of Action, for all of the damages set forth in Para. 1-7 above, for punitive damages in an amount according to proof, and for additional attorney's fees relating to successful prosecution of the Eighth Cause of Action of $1,000 and costs of litigation, as set forth in Cal. Civil Code Section 56.35;**

**10.  On the Ninth Cause of Action, for all the damages set forth in Para. 1-7 above, as a joint and several obligation of Defendant Schwartz Semerdjian Cauley Schena & Bush along with Defendant Eden Housing Management, Inc.;**

COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT, WRONGFUL TERMINATION, AND DISCRIMINATION [etc.]

1

11.  For such other and further relief as the court deems just and proper.

2

3    Date: October 21, 2024          BRUCE LEICHTY, A PROFESSIONAL CORPORATION

4

5                          By:_____

6                                Bruce Leichty, Attorney for Kimberly Frisk, Plaintiff

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT, WRONGFUL TERMINATION, AND DISCRIMINATION [etc.]

## VERIFICATION

I, the undersigned, Kimberly Frisk, state that I have reviewed the foregoing Second Amended Complaint and that the allegations stated therein are true of my own knowledge, except as to any matters which are therein stated on information or belief and any matters which are stated on the basis of threshold legal conclusions within the knowledge of my attorney, and as to those matters, I believe them to be true, and that this verification was executed in Oakdale, San Joaquin County, California, on the 21st day of October 2024.

KIMBERLY FRISK

COMPLAINT FOR BREACH OF EMPLOYMENT CONTRACT, WRONGFUL TERMINATION, AND DISCRIMINATION [etc. 49

EXHIBIT 1

EEOC Form 161-B (01/2023)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To | Kimberly R. Frisk | From | San Jose Local Office |
|---|---|---|---|
| | 868 Ridgeview Court | | 96 N Third St, Suite 250 |
| | Oakdale, CA 95361 | | San Jose, CA 95112 |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 556-2023-00409 | LISA FUNG, | (408) 889-1957 |
| | Senior Investigator | |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

Less than 180 days have elapsed since the filing date. I certify that the Commission s processing of this charge will not be completed within 180 days from the filing date.

The EEOC is terminating its processing of this charge.

***Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.***

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

# Margaret Ly

Digitally signed by
Margaret Ly
Date: 2023.03.07
09:29:20 -08'00'

<u>March 7, 2023</u>
**Date**

**Margaret Ly**
**Local Director**

cc  **Diane H. Paisley**
**Eden Housing Management, Inc.**
**22645 GRAND ST**
**Hayward, CA 94541**

**Bruce Leichty**
**Bruce Leichty, A Professional Corporation**
**P.O. Box 890941**
**Temecula, CA 92589**

Enclosures(s)

Enclosure with EEOC
Form 161-B (01/2022)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you** *receive* **this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit *before 7/1/10 – not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency　　　　　　　　　　　GAVIN NEWSOM, GOVERNOR

**Department of Fair Employment & Housing**

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
www.dfeh.ca.gov | contact.center@dfeh.ca.gov

KEVIN KISH, DIRECTOR

| | |
|---|---|
| EEOC Number: | 556-2023-00409 |
| Case Name: | Kimberly R. Frisk v. EDEN HOUSING MANAGEMENT INC |
| Filing Date: | March 7, 2023 |

## NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being dual filed with the California Department of Fair Employment and Housing (DFEH) by the U.S. Equal Employment Opportunity Commission (EEOC). The complaint will be filed in accordance with California Government Code section 12960. This notice constitutes service pursuant to Government Code section 12962.

The EEOC is responsible for the processing of this complaint and the DFEH will not be conducting an investigation into this matter. Please contact the EEOC directly for any discussion of the complaint or the investigation.

## NOTICE TO COMPLAINANT OF RIGHT TO SUE

This letter is also your Right to Sue notice. **This Right to Sue Notice allows you to file a private lawsuit in State court.** According to Government Code section 12965, subdivision (c)(1)(C), you may bring a civil action under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The lawsuit may be filed in a State of California Superior Court. Government Code section 12965, subdivision (c)(1)(C), provides that such a civil action must be brought within one year from the date of this notice. Pursuant to Government Code section 12965, subdivision (e)(1), this one-year period will be tolled during the pendency of the EEOC's investigation of your complaint. You should consult an attorney to determine with accuracy the date by which a civil action must be filed. This right to file a civil action may be waived in the event a settlement agreement is signed.

Be advised, the DFEH does not retain case records beyond three years after a complaint is filed.

DFEH-200-02 (Rev. 02/2022)

EXHIBIT 2

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ EEOC ☐ FEPA | 556-2023-00409 |

| California Department Of Fair Employment & Housing | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.) | Home Phone | Year of Birth |
|---|---|---|
| Kimberly R. Frisk | (209) 566-6152 | |

Street Address

868 Ridgeview Court
Oakdale, CA 95361

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| EDEN HOUSING MANAGEMENT INC | 101 - 200 Employees | |

Street Address

22645 GRAND ST
HAYWARD, CA 94541

| Name | No. Employees, Members | Phone No. |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest   Latest |
| Religion, Retaliation | 08/17/2021   10/28/2022 |

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

I was employed with the above-named employer from October 9, 2018 until October 1, 2021, even though I was not told I was terminated. I regard my termination effective October 28, 2022, because that is when the employers attorney stated I would have to reapply for a position.

On August 17, 2021, I was notified by Respondent that all employees would be required to be fully vaccinated by October 4, 2021, unless you have a religious or medical exemption. I sincerely hold a religious belief that conflicted with my employer's vaccination requirement. Respondent required me to submit a statement from a religious leader in order to qualify for the religious exemption. I was not part of an organization with a religious leader. On September 8, 2021, Diane Paisley (unknown religion), Director of Human Resources, sent me an email reminding me to provide proof of vaccination by October 4, 2021, or request for a religious or medical exemption, or resign my position. On September 16, 2021, I informed Diane Paisley, Director of Human Resources, that I would not be getting vaccinated by the companys deadline of 10/4/2021 for personal reasons, which was the only option I believed I had, and she did not provide me with other options. Ms. Paisley sent an email informing me that I was required to

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| _signature_   3/6/2023 | |
| Date     Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC<br>FEPA | 556-2023-00409 |

| California Department Of Fair Employment & Housing | and EEOC |
|---|---|
| *State or local Agency, if any* | |

comply with the vaccination mandate, or I could no longer be employed if I refused to comply. I asked if I could pursue unemployment benefits if I was terminated, and Ms. Paisley informed me that she will not contest unemployment benefits, the state determines it. Ms. Paisley scheduled my last day of work effective October 1, 2021. My last day consisted of a virtual meeting with Ariana Garcia (unknown religion), Human Resources Generalist, who conducted an exit interview, and she told me that I voluntarily resigned, which I strongly denied. I was asked to return my keys and vacate my office and the living accommodations provided to me, which I did. On October 28, 2022, a company lawyer confirmed that I had been terminated, in the context of an offer by the employer to reapply.

I believe that I have been discriminated against because of my religion, Christian, and retaliated in violation of my rights as protected by Title VII of the Civil Rights Act of 1964, as amended.

.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| *Date*                    3/6/2023<br>*Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

**NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW**

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

**NOTICE OF NON-RETALIATION REQUIREMENTS**

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.